UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAN BEDKER, JR.,

    Plaintiff,

v.

MARK SELING, *et al*,

    Defendants.

Case No. C04-5696RJB

REPORT AND RECOMMENDATION

Noted for October 28, 2005

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates Rules MJR 1, MJR 3, and MJR 4. Plaintiff has filed a civil rights action under 42 U.S.C. § 1983 and is proceeding *in forma pauperis*.

This matter comes before the court on defendants' motion to dismiss (Dkt. #20), which has been converted into a motion for summary judgment (Dkt. #43). Plaintiff responded to defendants motion to dismiss and defendants have filed both a response and a reply to the court's order converting their motion to dismiss into a motion for summary judgment. No further response or reply, however, has been filed by plaintiff. Having reviewed defendants' motion and the remaining record, the undersigned submits the following report and recommendation for the Honorable Robert J. Bryan's review.

DISCUSSION

I.    Factual and Procedural History

Plaintiff is currently a resident at the Washington State Department of Social and Health Services' ("DSHS") Special Commitment Center ("SCC"). He has been detained at the SCC pursuant to the state

court's determination that probable cause exists that he is a sexually violent predator. <u>See</u> Defendant's Motion to Dismiss, Exhibits 1 and 2.

On December 8, 2004, plaintiff filed a civil rights complaint, in which he alleged as follows: (a) that defendants failed to provide him with an evaluation as to whether he is a sexually violent predator within forty-five days of a state court order finding probable cause to believe him to be a sexually violent predator; (b) that this forty-five day time limit is required by state statute, administrative regulations and an SCC policy statement ("SCC Policy 301"); and (c) that defendants' failure to timely provide such an evaluation violates his right to substantive due process under the Fourteenth Amendment to the United States Constitution. Plaintiff requested relief in the amount of $1,500.00 in damages per day for the period of March 5, 2003, through October 12, 2004.

On January 31, 2005, plaintiff filed a motion to amend his complaint, attaching thereto a proposed amended complaint. (Dkt. #17). On Feburary 14, 2005, defendants filed their motion to dismiss plaintiff's original complaint. (Dkt. #20). Defendants noted that while plaintiff's original complaint remained the only viable complaint in the case as the court had not yet filed plaintiff's proposed amended complaint, their motion was equally applicable to the amended complaint, because it merely substituted defendants and also sought declaratory relief. On February 16, 2005, the court granted plaintiff's motion to amend his complaint, but ordered him to file another copy of his amended complaint, as the one attached to his motion was incomplete. (Dkt. #21).

Plaintiff filed a complete copy of his amended complaint on March 7, 2005. (Dkt. #25). Plaintiff further notified the court that he would complete his own service of the amended complaint on the newly named defendants. (Dkt. #26). The court warned plaintiff, however, that service must be made on all of the named defendants, informing him that if he chose to serve the amended complaint himself he must do so on the other named defendants as well. (Dkt. #29). To that extent, the court also directed the clerk to issue plaintiff a sufficient number of summons to use in serving the amended complaint.

Nothing in the record indicates plaintiff has completed service of the amended complaint on any of the defendants. However, defendants have not raised the issue of defective service. In addition, as noted above, in his amended complaint plaintiff primarily seeks to substitute named defendants and requests further declaratory relief. As such, the reasons the undersigned finds for granting defendants' converted

REPORT AND RECOMMENDATION
Page - 2

1 motion for summary judgment with respect to plaintiff's original complaint apply equally to his amended
2 complaint. Specifically, as discussed in further detail below, the undersigned finds plaintiff's substantive
3 due process rights were not violated and that defendants are entitled to qualified immunity.

4 II.     Standard of Review

5       Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no
6 genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
7 Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether or not to grant summary
8 judgment, the court must view the record in the light most favorable to the nonmoving party and must
9 indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e).

10       When a motion for summary judgment is made and supported as provided in Fed. R. Civ. P. 56, the
11 adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by
12 affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a
13 genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary
14 judgment, if appropriate, shall be rendered against that party. Id. The moving party has the burden of
15 demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S.
16 242, 257. Mere disagreement or the bald assertion that a genuine issue of material fact exists does not
17 preclude summary judgment. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,
18 818 F.2d 1466, 1468 (9th Cir. 1987).

19 III.    Washington's Sexually Violent Predators Statutory and Regulatory Scheme

20       Under RCW 71.09.030, a county prosecuting attorney may file a petition with that county's court,
21 alleging that an individual who falls within one of five statutorily defined classes of persons is a "sexually
22 violent predator," as that term is defined in RCW 71.09.020(16), and "stating sufficient facts" to support
23 that allegation. Upon the filing of such a petition, the court must "determine whether probable cause exists
24 to believe that the person named in the petition is a sexually violent predator." RCW 71.09.040(1). If that
25 determination is made, the court then is to "direct that the person be taken into custody." Id. Within
26 seventy-two hours of being taken into custody, the court must provide the person with notice of, and an
27 opportunity to appear at, a hearing to contest probable cause. RCW 71.09.040(2).

28       If a determination of probable cause is made at the hearing, the court must "direct that the person
be transferred to an appropriate facility for an evaluation" as to whether he or she is a sexually violent

REPORT AND RECOMMENDATION
Page - 3

predator. RCW 71.09.040(4). The statute further states that the evaluation is to be conducted by a person "deemed to be professionally qualified to conduct" such an evaluation in accordance with rules developed by DSHS. Id. Pursuant to this mandate, DSHS has promulgated regulations governing how the sexually violent predator evaluation is to be conducted:

> (1) When a court orders a person transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator, pursuant to RCW 71.09.040(4), the department shall, prior to the scheduled commitment hearing or trial, provide an evaluation to the court, and must make a recommendation as to whether the person has been convicted of or charged with a crime of sexual violence and suffers from a mental abnormality or personality disorder which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility.
>
> (2) The evaluation must be conducted in accordance with the criteria set forth in WAC [Washington Administrative Code] 388-880-033, and must be in the form required by and filed in accordance with WAC 388-880-034 and 388-880-036.

WAC 388-880-030. However, "[i]n no event shall the person [with respect to whom probable cause was found to exist] be released from confinement prior to trial." RCW 71.09.040(4).

Pursuant to RCW 71.09.050(1), "[w]ithin forty-five days after the completion of any hearing held pursuant to RCW 71.09.040, the court shall conduct a trial to determine whether the person is a sexually violent predator." The trial may be continued: (a) "upon the request of either party and a showing of good cause," or (b) "by the court on its own motion in the due administration of justice," if the person "will not be substantially prejudiced." Id. Again, the statute provides that the person "shall be confined in a secure facility for the duration of the trial. Id.

IV.   Plaintiff's Substantive Due Process Rights Have Not Been Violated

The Fourteenth Amendment to the United States Constitution provides that "no state shall 'deprive any person of life, liberty, or property without due process of law.'" Toussaint v. McCarthy, 801 F.3d 1080, 1089 (9th Cir. 1986). Thus, plaintiff "must, as a threshold matter, show a government deprivation of life, liberty, or property," to establish a substantive due process claim under the Fourteenth Amendment. Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (absence of claim that liberty or property interest has been impaired is fatal defect in substantive due process argument) (quoting Jeffries v. Turkey Run Consol. Sch. Dist., 492 F.2d 1, 4 (7th Cir. 1974)). Substantive due process forbids the deprivation of life, liberty, or property in such a way that "'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Id. (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)).

In his original complaint, plaintiff alleges that Washington's sexually violent predator statute commands the state to provide an evaluation to determine whether he is a sexually violent predator within forty-five days of his probable cause hearing. A plain reading of the statutory scheme, however, does not support this argument. Under RCW 71.09.040(4), if a determination of probable cause is made at the probable cause hearing, the court must "direct that the person be transferred to an appropriate facility for an evaluation" as to whether he or she is a sexually violent predator. RCW 71.09.050(1) states that within forty-five days after the hearing held pursuant to RCW 71.09.040, the court "shall conduct a trial to determine whether the person is a sexually violent predator." The trial, however, may be continued: (a) "upon the request of either party and a showing of good cause," or (b) "by the court on its own motion in the due administration of justice," if the person "will not be substantially prejudiced." RCW 71.09.050(1). Neither statute mandates that the evaluation occur within forty-five days of the probable cause hearing. While RCW 71.09.050(1) does require that a trial be held within forty-five days after the hearing, the trial may be continued by either party or *sua sponte* by the court as indicated above.

Plaintiff further alleges in his original complaint that such a right is provided by administrative regulations promulgated by DSHS. Plaintiff, however, points to no specific administrative regulation that grants such a right. Indeed, none of the regulations adopted by DSHS to conduct sexually violent predator evaluations pursuant to the mandate of RCW 71.09.040(4) grants that right or even makes reference to a forty-five day period. See WAC 388-880-030, -033, -034, -035, and -036. Therefore, neither the applicable state statutes nor the administrative regulations promulgated by DSHS to conduct sexually violent predator evaluations support plaintiff's argument that he has the substantive due process right to have his evaluation performed within forty-five days of his probable cause hearing.

Plaintiff's claim in both his original and amended complaints that his substantive due process right to have an evaluation performed within a forty-five day period arises from the language of SCC Policy 301 is equally without merit. SCC Policy 301, plaintiff asserts, requires the SCC to provide an evaluation (which plaintiff terms an "admissions" evaluation) within forty-five days of a resident's admission to the SCC to determine if the resident needs to be confined to a secure facility. However, plaintiff's reliance on SCC Policy 301 is misplaced.

It is true that an agency "can create a duty to the public which no statute has expressly created."

United States v. Figty-Three (53) Eclectus Parrots, 685 F.2d 1131, 1136 (9th Cir. 1982). However, "[n]ot all agency policy pronouncements which find their way to the public can be considered regulations enforceable in federal court." Id. (internal quotes and citations omitted); see also James v. United States Parole Commission, 159 F.3d 1200, 1205 (9th Cir. 1998) ("It is well settled that internal policy manuals of federal agencies do not generally create due process rights in others."). For an internal agency policy to have the "force and effect of law" that is "enforceable against an agency in federal court," it must:

> (1) prescribe substantive rules-not interpretive rules, general statements of policy or rules of agency organization, procedure or practice-and, (2) conform to certain procedural requirements.

Fifty-Three (53) Eclectus Parrots, 685 F.2d at 1136 (internal quotes and citations omitted). To satisfy the first requirement, the policy "must be legislative in nature, affecting individual rights and obligations." Id. To satisfy the second requirement, it "must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed" by the legislature. Id.

     A review of the record indicates SCC Policy 301 is an interpretive, procedural policy statement, and is not intended to have the "force and effect of law." James, 159 F.3d at 1206 (finding plaintiff could not rely on internal agency statement, as it was used only as interpretive, procedural rule to guide agency practice). The language at issue in SCC Policy 301 concerns certain information the forensic therapist is responsible for providing a new resident upon that resident's admission to the SCC. That language states in relevant part that the forensic therapist:

> 4.    Informs the resident of the following:
>
>     a.    A psychologist will meet with resident and explain the SCC evaluation process.
>
>     b.    The evaluation will be completed with forty-five (45) days from the date of admission unless the resident waives this right through his or her attorney.
>
>     c.    Conversations and behavioral observations during this period are not confidential.
>
>     d.    When the evaluation is completed, a letter describing the evaluation findings will be mailed to the Court hearing the case.

SCC Policy 301, Exhibit 3, attached to Defendant's Motion to Dismiss. It is apparently item 4.b. above that plaintiff believes provides him with the substantive due process right to receive an evaluation within forty-five days of being admitted to the SCC.

1  According to Lee Mosley, who is the Acting Director of Policy and Staff Training for the SCC, SCC Policy 301 was "originally created to guide internal procedures relating to the admissions of new residents in compliance with the requirements of state law." Declaration of Lee Mosley, ¶ 1 and ¶ 4, Exhibit 1, attached to Defendants' Additional Information Re: Defendants' Converted Motion for Summary Judgment ("Additional Information"). As with other SCC internal policy statements, SCC Policy 301 is "intended to guide agency staff in the internal operations" of the SCC in compliance with state law, agency regulations, and administrative policies. Id. at ¶ 3. With respect to item 4.b. of SCC Policy 301, Mr. Mosley further declared in relevant part:

> The statement on page 4 of the attached [SCC Policy 301] Procedures [section], item 4.b., was meant to assure that residents were aware of (1) RCW § 71.09.050(1), which addresses a forty-five day speedy trial period between a probable cause hearing and a commitment trial, and (2) RCW § 71.09.040(4), which speaks to the forensic evaluation which must be performed before the trial. That statement, to my best belief, was not intended to obligate the Special Commitment Center to actions or a timeline different from that of the statute and administrative code.

Declaration of Lee Mosley, ¶ 6. As such, SCC Policy 301 does not create the substantive due process right plaintiff seeks.

V. Qualified Immunity

Under the doctrine of qualified immunity, state officials "performing discretionary functions [are protected] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Somers v. Thurman, 109 F.3d 614, 617 (9th Cir. 1997). To determine whether a state official is entitled to qualified immunity, the court must perform a two part inquiry. First, the court considers "whether the law governing the official's conduct was clearly established." Somers, 109 F.3d at 617. If the law was not clearly established at the time, "the official is entitled to immunity from suit." Id. If the law was so established, the court next asks whether "under that law, a reasonable official would have believed the conduct was lawful." Id. Thus, "an official is denied qualified immunity only if the law was clearly established and a reasonable official could not have believed the conduct was lawful." Id.

The above inquiry "generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.'" Grossman v. City of Portland, 33 F.3d 1200, 1208 (9th Cir. 1994) (citing Anderson v. Creighton, 483 U.S. 635, 639 (1987). To

REPORT AND RECOMMENDATION
Page - 7

defeat a claim of qualified immunity, the unlawfulness of the state official's conduct must be "apparent." Id. (citing Anderson, 483 U.S. at 640). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (citation omitted); Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). Such an "accommodation for reasonable error" has been made "because 'officials should not err always on the side of caution' because they fear being sued." Hunter, 502 U.S. at 229 (citation omitted).

Defendants argue they are entitled to qualified immunity. Prior to determining whether defendants are entitled to qualified immunity, however, the court must first determine is plaintiff "has alleged the deprivation of an actual constitutional right at all." Conn v. Gabbert, 526 U.S. 286, 290 (1999). If not, the issue of qualified immunity does not come before the court. Id. at 293. As discussed above, plaintiff has not shown that he has a substantive due process right in receiving a sexually violent predator evaluation within a forty-five day period. As such, plaintiff cannot establish that a substantive due process violation has occurred. Accordingly, the undersigned does not reach the issue of whether defendants are entitled to qualified immunity.

## CONCLUSION

For the aforementioned reasons, the undersigned recommends that the court GRANT defendants' converted motion for summary judgment. Plaintiff has not alleged any cause or claim upon which relief can be granted in this matter.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed set this matter for consideration on **October 28, 2005**, as noted in the caption.

DATED this 3rd day of October, 2005

Karen L. Strombom
United States Magistrate Judge